# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
937-818-9359 )
)
)

Case No. 
3:19 mj 647
SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC s. 1951 | (interference with commerce through robbery or the attempt to do so |

The application is based on these facts:

See Attached Affidavit of Lance Kepple

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lance Kepple, Special Agent of the FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-1-19

_____
*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **Lance Kepple**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 937-818-9359 with International Mobile Subscriber Identity / Electronic Serial Number 089254528709509191, with listed subscriber(s) unknown (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider in Overland Park, Kansas. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), United States Department of Justice, Cincinnati Division. I have been employed as a Special Agent with the FBI since September 1999. I have received training in organized crime, fraud, public corruption, civil rights, drug trafficking investigations and have participated in numerous related arrests and convictions, related surveillance, investigations involving the distribution of narcotics and conspiracy to distribute narcotics, money laundering offenses, public corruption,

civil rights, fraud, supervised the activities of informants who have provided information and assistance which resulted in seizures, arrests, and convictions. I have received training in cell phone historical analysis and cell phone geolocation.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Deverono Somerset, the subscriber of Target Cell Phone, has violated 18 U.S.C. § 1951 (interference with commerce through robbery or the attempt to do so). Somerset is not currently charged with these crimes but is being sought by local law enforcement for questioning and the seizure of Target Cell Phone, which was used in the commission of the above described crimes, as evidence of those crimes. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The below information was relayed to me from the law enforcement officer described below or personally observed by your affiant:

8. On September 19, 2019 at 1951 hours, Kettering Police Department (KPD) dispatch received an open line 9-1-1 phone call. Dispatch's GPS plotted the call to 5670 Coach Drive East at the Coach House Manor Apartments in Kettering. A female voice was heard in the background saying someone got shot and they are almost to the hospital. Officer Stewart and Officer Stull arrived on Coach Drive East and realized that the given address did not exist. They were then approached by several witnesses who advised there was a body carried out of 5635 Coach Drive East and placed in a vehicle, which left the scene. A witness stated that they thought the body was carried out from apartment unit I. The officers noticed that the door to apartment unit I was closed and locked. The officers observed a Ring doorbell camera to the right of the apartment door.

9. Officer Stull forced the apartment door open and officers made entry to search apartment unit I for any possible victims. While doing so, they observed a spent shell casing on the floor next to the front door, blood spots on the carpet, and a surveillance camera in the corner of the front room. Officers also observed drug and vaping paraphernalia throughout the apartment in plain view.

10. Since no victims were observed at the residence, officers responded to the closest hospital, which was Miami Valley South. Officers learned that a gunshot victim was brought into the Miami Valley South Maternity Department around the time of the 9-1-1 call. The victim was identified as Mitchel M. Miller (DOB 11/13/90), the resident of 5635 Coach Drive East, apartment unit I. The victim was accompanied by three witnesses, Austin R. Defoor, Andrea L. Champ, and Jacob A. Florio. Miller was pronounced dead by Miami Valley Hospital South medical staff.

11. Detectives responded to Miami Valley Hospital South and spoke with Defoor. Defoor stated that he was at Miller's apartment with Champ and another unknown black male. Defoor believed that he observed Miller perform a drug deal with the unknown black male but after the black male left the apartment, three other unknown black males busted in the front door with guns. One male made Defoor get on the ground as he held him at gunpoint and another male held Miller on the ground at gun point. The third male went searching the apartment. After the third male left the apartment, the male holding Defoor down followed but the male holding Miller down hit him with the pistol several times as he shouted at him. He then walked towards the door, turned and shot one round at Miller then ran out the door.

12. Detectives spoke with Champ who stated that three black males came into the apartment with masks on. One of the males searched through the apartment and kept taking items. Champ did not get a good look at the suspects but she did hear one of them yelling at Miller. When she thought the suspects had left the apartment, she heard a gunshot. She then heard Miller yell that he had been shot. Champ then helped get Miller into the car and drove him to the hospital.

13. A search warrant was prepared for the residence at 5635 Coach Drive East apartment unit I and was signed by Kettering Municipal Court Judge Long on 0September 19, 2019 at 2315 hours. While KPD detectives were executing the search warrant, detectives located a large amount of vaping THC-filled cartridges in the apartment and also a trail of the same type of cartridges leading out to where the suspect vehicle was believed to have been parked. Detectives also verified that the spent shell casing on the floor was 9mm.

14. The Montgomery County Coroner's office confirmed that Miller's death was caused by a 9mm gun shot.

15. KPD was contacted by an acquaintance of J'lynn Frank on September 21, 2019. The acquaintance provided information that Frank's boyfriend, Dylan Dugan, may have been involved in the crime. Through Justice Web and other Law Enforcement databases, it was confirmed that Dugan and Frank reside at 4710 Curundu Ave. Dayton, Ohio 45416. During surveillance on September 21, 2019, detectives observed Frank coming and going from the house around 1600 hours. Dugan was observed letting a dog out the door around the same time.

16. During the investigation, Det. Kowalski and Det. Stout interviewed J'lynn R. Frank. It was confirmed that Frank was the girlfriend of Dylan A. Dugan, that they both lived together at 4710 Curundu Ave., and also had a child together. Frank stated that Dugan had recently started hanging out with three younger black males that live close to him. Frank stated that on September 19, 2019 around 1800 hours, three black males and one white male came to their house and picked Dugan up in an unknown vehicle. When Dugan returned home later that night, Frank noticed that Dugan had a lot of vaping THC-filled cartridges and a bag of marijuana. Frank thought that was odd because he had just lost his job and was complaining about how he didn't have any money to pay back a debt to their friend's uncle. Dugan made comments to Frank that he planned on selling the cartridges to make money to pay back his debt. Dugan told Frank that he was fronted the cartridges. Frank stated that she had located a black gun in Dugan's dresser drawer a few weeks prior. She described that the gun was not a revolver but a black gun like what cops carry. Frank stated that on September 20, 2019 around 2000

5

hours Frank and Dugan got into an argument and Dugan made the comment, "I shot someone last night and don't think I won't do it again."

17.     Due to these findings, it is believed that Dugan was involved with the crimes being investigated and that more evidence related to the crimes committed would be located within the residence.  Moreover, I believe that there is probable cause to believe that the assailants were attempting to rob the victim of controlled substances and cash.  I know that the sale of controlled substances affects interstate commerce.

18.     On September 21, 2019 at 1932 hours Det. A. Pedro obtained a signed search warrant for 4710 Curundu Ave. Dayton, Ohio 45416, from Trotwood Municipal Court Judge James Piergies.

19.     On 0September 21, 2019 at approximately 2010 hours KPD Detectives served the search warrant at 4710 Curundu Ave, Dayton, Ohio 45416.

20.     During the search of 4710 Curundu Ave. Dayton, Ohio 45416, several items stolen from the victim's residence were located inside Dugan's residence to include illegal narcotics and a large gold colored bowl matching items listed as stolen from 5635 Coach Drive East apartment unit I.  Detectives also located a black ski mask, black gloves, a black jacket, and a nine millimeter Beretta handgun and ammunition that matched the type of bullet casing that was collected in the victim's apartment located at 5635 Coach Drive East apartment unit I, Kettering, Ohio. On September 21, 2019 Kettering Detectives arrested Dylan A. Dugan (DOB 06/26/95) on drug related charges and booked him into the KPD Jail.

21. In addition to the above listed evidence, a black Samsung cellular device bearing IMEI #352138102784818 was located in the front room of Dugan's residence during the search warrant. At the time the search warrant was announced, Dugan surrendered, exiting from this room out of the front door. The mobile device was located within close proximity to a marijuana cigarette, which Dugan stated he had been smoking prior to being taken into custody. From recorded jail phone calls, Frank was overheard informing Dugan that the mobile device had been recovered by police. Dugan expressed concern that the phone had been recovered and that he had left it without passcode protection.

22. On September 23. 2019 at 1932 hours Det. A. Pedro obtained a signed search warrant for the black Samsung cellular device bearing IMEI #352138102784818, from Kettering Municipal Court Judge James Long.

23. During a manual search of the Samsung cellular device, the affiant located photos of Dugan and videos appearing to have been made by and depicting Dugan. Additionally, an audio recorded message to "Dylan" was located within text messages from the number 440-622-5854 at 1542 hours on September 21, 2019. The cellular device listed an email account of lretdayton@gmail.com, which is a Google email account, and several apps, to include Google apps. Call and text records also showed activity between the Samsung cellular device and a contact named "Terrence" at 216-868-1276 and "De" at 937-818-9359.

24. A series of text messages from Dugan to "De" were sent on September 19, 2019, beginning at 1121 hours through 1738 hours. The texts contained discussions of missing a robbery due to only having a 6-shot revolver and planning a "lick" for the weekend. In the affiant's experience, the term "lick" is used to describe a robbery, burglary, or theft. The texts

7

also contained a video sent on September 19, 2019 at 0930 hours of a black male handling a black semi-automatic pistol. Following the video, Dugan is negotiating a price, believed to be for the pistol. The final text at 1738 hours was from "De" instructing Dugan to text "T" the address.

25. A of text message from Dugan to "Terrence" was sent on September 19, 2019 at 1739 hours. The text showed Dugan arranging to be picked up by Terrence with the content of 4710 Curundu Ave.

26. Call activity showed calls from "Terrence" at 1306 hours and De at 1341 hours on September 19, 2019. There was no call activity on Dugan's phone from 1804 until 2012 hours on September 19, 2019.

27. On September 23, 2019 at 1150 hours Det. Ryan Vandegrift obtained a signed search warrant for the Ring camera system located around and within the victim's residence from Kettering Municipal Court Judge James Long.

28. The search warrant was served upon Ring LLC on September 23, 2019 and the requested records and video were received the same date. The video showed four masked males, two with firearms, enter the victim's apartment. The description of Dugan and the clothes and firearm recovered from 4710 Curundu Ave, Dayton, Ohio 45416 on September 21, 2019 appeared consistent with one of the suspects in the video.

29. Between September 24, 2019 and approximately October 28, 2019, several search warrants have been obtained for and served on the respective cell phone providers for the above described co-conspirators; Dugan, "Terrence" at 216-868-1276 and "De" at 937-818-9359. Specifically, 937-818-9359 (Target Cell Phone) is serviced by Sprint and subscribed to by

Deverono Somerset. In addition, numerous interviews with associates of Somerset have confirmed that the target Cell Phone is Somerset's telephone number. Analysis of the cell phone records obtained via search warrants identified possible additional co-conspirators. One of the additional persons identified was Marcus Thomas-Casey.

30. On approximately October 21, 2019, Marcus Thomas-Casey was approached by KPD Detective Vince Mason and confessed to the robbery and murder. Thomas-Casey identified Deverono Somerset as being involved. Thomas-Casey also stated that the Target Cell Phone belongs to Somerset.

31. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily

serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

32. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

33. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not

authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

35. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

36. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Lance Kepple
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on \_\_\_\_Nov 1\_\_\_\_, 2019

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 937-818-9359 with International Mobile Subscriber Identity / Electronic Serial Number 089254528709509191, with listed subscriber(s) unknown (the "Target Cell Phone"), whose wireless service provider is Sprint, a company headquartered at Overland Park, Kansas.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Sprint.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of **18 USC § 1951** involving Deverono Somerset.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.